# ROBERT BLASKO ET AL. *v.* COMMISSIONER OF REVENUE SERVICES
## (AC 26640)

McLachlan, Harper and Dupont, Js.

Argued March 29—officially released November 21, 2006

*Paul M. Scimonelli*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (defendant).

*Robert Blasko*, pro se, the appellee (named plaintiff).

*Opinion*

McLACHLAN, J. The defendant, the commissioner of revenue services, appeals from the judgment of the trial court determining that the plaintiffs, Robert Blasko and Mary Elizabeth Blasko, were entitled to claim and use the Connecticut alternative minimum tax credit accrued from 1997 to reduce their Connecticut income tax liability for 1998. On appeal, the defendant claims that the court improperly (1) concluded that because the plaintiffs had no federal alternative minimum tax liability in their 1998 tax year, the plaintiffs' adjusted federal tentative minimum tax was zero for purposes of calculating the credit allowable under General Statutes § 12-700a (d) (2)[1] for that tax year, (2) concluded that the plaintiffs' "Connecticut minimum tax," as that term is

---

[1] General Statutes § 12-700a (d) (2) provides: "The credit allowable for a taxable year under this subsection is limited to the amount, if any, by which (A) (i) the tax imposed under section 12-700, (ii) less the credit, if any, allowed under section 12-704 exceeds (B) (i) the Connecticut minimum tax, determined without regard to whether the individual or the trust or estate is subject to and required to pay for that taxable year the federal alternative minimum tax under Section 55 of the Internal Revenue Code, (ii) less the credit, if any, allowed under subsection (e) of this section."

defined in General Statutes § 12-701 (26) (A)[2] and used in § 12-700a (d) (2), was zero for purposes of calculating the credit allowable under § 12-700a (d) (1), and (3) concluded that the plaintiffs should have reported zero on line nine of their 1998 form CT-8801 (CT-8801). Although we agree that the court miscalculated the plaintiffs' "Connecticut minimum tax" for the purposes of determining whether they were entitled to a credit in 1998 pursuant to § 12-700a (d) (2), we nevertheless affirm the court's judgment on other grounds.[3]

In February, 1997, Robert Blasko retired as a managing director of J.P. Morgan Chase & Company (J.P. Morgan). During Blasko's employment with J.P. Morgan, he received incentive stock options to purchase 9474 shares of J.P. Morgan common stock. Upon his retirement, Blasko exercised the stock options on February 26, 1997, which netted him $450,939 of income subject to alternative minimum tax. This amount was treated as tax deferred income pursuant to 26 U.S.C. § 422 and was taxable under the alternative minimum tax but not as income for regular federal income tax purposes. The gain was realized in 1998 when Blasko sold the stock.

For 1997, the plaintiffs filed a joint federal individual income tax return form 1040, reporting a taxable income of $325,688, excluding the deferred income that came from the exercise of the stock options, resulting in a tax of $103,283. The plaintiffs also filed a 1997 federal alternative minimum tax form 6251 to calculate

[2] General Statutes § 12-701 (26) (A) provides: " 'Connecticut minimum tax' of an individual means the lesser of (i) nineteen per cent of the adjusted federal tentative minimum tax, as defined in subdivision (24) of subsection (a) of this section, or (ii) five and one-half per cent of the adjusted federal alternative minimum taxable income, as defined in subdivision (30) of this subsection."

[3] "[An appellate court] can sustain a right decision although it may have been placed on a wrong ground." *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

their alternative minimum tax liability for that year, which, because it included tax liability attributable to the exercise of the stock options, increased the amount due by $115,219. This amount was reported on line forty-eight of their 1997 federal form 1040, along with an employment tax of $396 reported on line forty-seven, so that the total federal tax paid by the plaintiffs for 1997 was $218,898. Because the plaintiffs were required to pay federal alternative minimum tax, they were also required to pay Connecticut alternative minimum tax on the deferred income. The Connecticut alternative minimum tax paid in 1997 was $25,471.

For 1998, the plaintiffs, having sold the J.P. Morgan stock, filed a joint federal individual income tax return form 1040, reporting an adjusted gross ordinary income of $5,355,120 and a tax of $1,992,790. The plaintiffs also filed a 1998 federal alternative minimum tax form 6251 and reported an alternative minimum taxable income of $5,351,997, with a tentative minimum tax of $1,495,059. Because the plaintiffs' ordinary income tax exceeded their tentative minimum tax, they were not required to pay a federal alternative minimum tax for 1998. Similarly, on the state level, the plaintiffs owed no minimum tax because the Connecticut alternative minimum tax is predicated on the existence of a federal alternative minimum tax liability.[4]

The plaintiffs prepared and filed a 1997 federal form 8801 (credit for prior year minimum tax) with their 1998 form 1040. The 1997 federal form 8801 showed a minimum tax credit of $115,219, to be reported as a credit on their 1998 federal tax return. The $115,219

---

[4] General Statutes § 12-700a (a) provides in relevant part: "Every resident individual, as defined in section 12-701, subject to and required to pay the federal alternative minimum tax under Section 55 of the Internal Revenue Code shall pay, in addition to the tax imposed under section 12-700, the net Connecticut minimum tax. . . ."

credit was then reported on line forty-eight of the plaintiffs' 1998 federal form 1040 and applied to reduce their total tax for 1998 from $1,992,790 to $1,877,571.

The plaintiffs assumed that because they were entitled to use the 1997 credit of $115,219 against their federal income earned in 1998, Connecticut tax law would also permit similar treatment as to their 1998 state taxable income. In order for the plaintiffs to obtain the 1997 credit for the Connecticut alternative minimum tax, they were instructed by CT-8801 to fill out a 1998 Connecticut form 6251 (CT-6251) as well as CT-8801.[5] Line eight of form CT-8801 contained the 1998 Connecticut individual income tax of $243,579.11 after allowable credits. Line nine of CT-8801 contained the 1998 alternative minimum tax of $270,812 after allowable credits.[6] The 1998 form CT-6251 instructed the plaintiffs to deduct their Connecticut income tax of $243,579.11 from the Connecticut alternative minimum tax of $270,812 to arrive at the net Connecticut alternative minimum tax of $27,232.89. Line ten of form CT-8801 instructed the taxpayer to subtract line nine from line eight, which resulted in zero in this case. The net result of this calculation was that the plaintiffs could not use the alternative minimum tax credit earned in 1997 to reduce their state income taxes for 1998. The defendant found, as a result of its calculations in an audit reconstruction, that the plaintiffs' 1998 Connecticut alternative minimum tax of $270,812 exceeded their ordinary

---

[5] Because the plaintiffs had no federal minimum tax obligation in 1998, they were not required to complete and file CT-6251 for tax liability purposes. However, in order to complete and file CT-8801, claiming a tax credit from 1997, they were required to complete the 1998 CT-6251.

[6] Pursuant to General Statutes § 12-701 (26) (A), the Connecticut minimum tax for an individual is the lesser of 19 percent of the adjusted federal tentative minimum tax or 5 percent of the adjusted federal alternative minimum taxable income. The defendant, in an audit reconstruction, concluded that taking the lesser of 19 percent of the federal tentative minimum tax or 5 percent of the adjusted federal alternative minimum taxable income, the plaintiffs had a Connecticut minimum tax of $270,812.

income tax of $243,579.11. Therefore, relying on § 12-700a (d) (2), the defendant determined that the plaintiffs were not able to use their minimum tax credit of $25,471 earned in 1997 to reduce their income taxes for 1998 due to the state.

On February 9, 2004, the plaintiffs appealed from this decision to the trial court. On October 28, 2004, the parties appeared before the court for trial. On March 10, 2005, the court issued a memorandum of decision, finding that the defendant's denial of the 1997 tax credit was inconsistent with the intent of the legislature because the plaintiffs were taxed twice on the same income. Applying General Statutes § 12-730, the court allowed the plaintiffs to use the 1997 tax credit of $25,471 against their taxes in 1998. On March 30, 2005, the defendant filed a motion for reargument and reconsideration of the court's decision. A subsequent hearing on the defendant's motion for reargument and reconsideration was held on May 9, 2005, after which the court affirmed its original judgment. This appeal followed.

The threshold issue in this appeal is the plaintiffs' eligibility to apply a tax credit for taxes paid on deferred income, when that income was realized and taxed as ordinary income in the following year. Resolution of this issue requires an analysis of the Connecticut alternative minimum tax credit structure, as set forth by § 12-700a (d) (2), and the related sections that define the terms contained therein. Because this matter presents an issue of statutory construction, our review is plenary. See *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, 273 Conn. 240, 249, 869 A.2d 611 (2005).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the

statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . Moreover, in seeking to ascertain the meaning of a statute, we must consider General Statutes § 1-2z, which provides: The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) *Chatterjee* v. *Commissioner of Revenue Services*, 277 Conn. 681, 689, 894 A.2d 919 (2006).

We further note the specific rules of construction of tax statutes. First, the defendant's interpretation of the taxation statutes at issue is not entitled to any special deference because, as in *Bell Atlantic NYNEX Mobile, Inc.*, the tax statute in question "ha[s] not previously been subjected to judicial scrutiny, [is] not the subject of a legislatively approved regulation and [is] not a time tested interpretation of the statute." (Internal quotation marks omitted.) *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, supra, 273 Conn. 251. Second, § 12-700a (d) (2) involves eligibility for a tax credit. As such, it operates in a manner analogous to a tax exemption in that it relieves potential taxpayers of a tax burden that they would otherwise bear. See id. Accordingly, we must construe § 12-700a (d) (2) "strictly against the party claiming the credit—that is, because the credit is a matter of legislative grace, we must interpret it to include only that which falls strictly within its terms." Id. Last, "[i]t is . . . well settled that the burden of proving entitlement to a claimed tax exemption rests upon the party claiming the exemption." (Internal quotation marks omitted.) Id., 252.

With these principles in mind, we begin with the text of the statute. As set forth in § 12-700a (d) (2), the

credit allowable for a taxable year is limited under this subdivision to the amount, if any, by which the tax imposed under § 12-700,[7] less the credit, if any, allowed under General Statutes § 12-704, exceeds the "Connecticut minimum tax," determined without regard to whether the individual is subject to and required to pay for that taxable year the federal alternative minimum tax under § 55 of the Internal Revenue Code, less the credit, if any, allowed under subsection (e) of § 12-700a. See General Statutes § 12-700a (d) (2).[8]

In order for a taxpayer to determine the "Connecticut minimum tax" for a given year, the taxpayer must first make two calculations, both of which are integrally related to and dependent on figures generated when the taxpayer determines liability for the federal alternative minimum tax, with certain adjustments. See General Statutes §§ 12-701 (26) (A) and (24), and 12-701 (30). These federal figures, the federal "alternative minimum taxable income"[9] and federal "tentative minimum tax,"[10] are calculated using federal form 6251.

---

[7] For convenience, this figure is hereinafter referred to as "regular Connecticut income tax liability."

[8] As an illustration, if an individual taxpayer's regular Connecticut income tax liability for the current year is $5000 and his current year's Connecticut alternative minimum tax is $3500, then his allowable credit is limited to $1500 ($5000 - $3500 = $1500). If that taxpayer's credit for the prior year's alternative minimum tax is $2000, the taxpayer can only use $1500 of that credit in the current taxable year ($500 is carried forward).

[9] Pursuant to 26 U.S.C. § 55 (b) (2), the term "alternative minimum taxable income" means "the taxable income of the taxpayer for the taxable year—

"(A) determined with the adjustments provided in [26 U.S.C. § 56] and [26 U.S.C. § 58], and

"(B) increased by the amount of the items of tax preference described in [26 U.S.C. § 57].

"If a taxpayer is subject to the regular tax, such taxpayer shall be subject to the tax imposed by this section (and, if the regular tax is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of the preceding sentence)."

[10] Pursuant to 26 U.S.C. § 55 (b) (1) (A), "In the case of a taxpayer other than a corporation, the tentative minimum tax for the taxable year is the sum of—

The federal alternative minimum taxable income, "unlike ordinary gross income, does not allow any miscellaneous itemized deductions." *Commissioner of Internal Revenue* v. *Banks*, 543 U.S. 426, 432, 125 S. Ct. 826, 833, 160 L. Ed. 2d 859 (2005). The federal alternative minimum taxable income is calculated "in the same manner as regular taxable income except that the adjustments provided in [26 U.S.C.] sections 56 and 58 are taken into account for [alternative minimum taxable income], and the tax preference items set forth in [26 U.S.C.] section 57 are not permitted to reduce [alternative minimum taxable income]." *Moore* v. *Commissioner* (Tax Court 2002) TC Memo 2002-196, RIA TC Memo P 54835, 84 T.C.M. (CCH) 164, aff'd, 66 Fed. Appx. 625 (6th Cir.), cert. denied, 540 U.S. 1005, 157 L. Ed. 2d 412, 124 S. Ct. 553 (2003). Generally, the effect of these adjustments is to increase a taxpayer's taxable income. See, e.g., id. ("[e]ffect of 26 [U.S.C.] § 56 [b] [1] [A] [i], [ii], and [b] [1] [E] was to increase taxpayer's taxable income amount"). To calculate the federal tentative minimum tax, which is a percentage of the alternative minimum taxable income, the alternative minimum tax rate[11] is applied to the alternative minimum taxable income.

In order to determine eligibility to apply a credit from a previous year in the Connecticut alternative minimum tax scheme, an individual taxpayer must take these two federal figures and determine any adjustments,[12] and

"(I) 26 percent of so much of the taxable excess as does not exceed $175,000, plus

"(II) 28 percent of so much of the taxable excess as exceeds $175,000.

"The amount determined under the preceding sentence shall be reduced by the alternative minimum tax foreign tax credit for the taxable year.

"(ii) Taxable excess. For purposes of this subsection, the term 'taxable excess' means so much of the alternative minimum taxable income for the taxable year as exceeds the exemption amount."

[11] See footnote 10.

[12] See General Statutes § 12-701 (24), (30).

then calculate a percentage of each figure in accordance with § 12-701 (26) (A).[13] Once the taxpayer calculates the two figures generated from percentages[14] of the adjusted federal figures, the Connecticut minimum tax is determined by selecting the lesser of the two. See General Statutes § 12-701 (26) (A). In order to ascertain the amount of applicable credit, if any, the taxpayer compares the Connecticut minimum tax with the regular Connecticut income tax liability for that year. See General Statutes § 12-700a (d) (2). The taxpayer may apply a minimum tax credit earned from a previous year, but only in the amount, if any, by which the regular state income tax exceeds the Connecticut minimum tax. General Statutes § 12-700a (d) (2).

Here, the plaintiffs reported a federal income tax of $1,992,790 for 1998, and calculated a federal tentative minimum tax of $1,495,059. Because the plaintiffs' ordinary federal income exceeded their federal tentative minimum tax, they were not required to pay a federal alternative minimum tax for 1998.[15] On the state level, therefore, no minimum tax was due because the Connecticut alternative minimum tax is predicated on the existence of liability for federal alternative minimum tax.

Nevertheless, the plaintiffs were required to calculate a hypothetical Connecticut minimum tax liability in order to determine whether they were eligible to apply their previously earned credit. Following § 12-700a (d)

---

[13] As provided in General Statutes § 12-701 (26) (A), the Connecticut minimum tax for an individual is defined as the lesser of "(i) nineteen per cent of the adjusted federal tentative minimum tax . . . or (ii) five and one-half per cent of the adjusted federal alternative minimum taxable income . . . ."

[14] The rate of 5 percent of the adjusted federal alternative minimum taxable income has since been increased to 5.5 percent. See Public Acts, Spec. Sess., June 2003, No. 03-6, § 72.

[15] See footnote 4.

(2), the plaintiffs' regular Connecticut income tax liability was $243,579[16] for 1998, according to the defendant. Consistent with the applicable Connecticut income tax rate,[17] this figure constituted roughly 4.5 percent of the plaintiffs' reported federal *adjusted* gross income of $5,355,120, as reported on line one of their 1998 state income tax form CT-1040.

With respect to the plaintiffs' Connecticut minimum tax, the defendant, utilizing § 12-701 (26) (A), generated figures of $287,478 (19 percent of the adjusted federal tentative minimum tax of $1,513,044) and $270,812 (5 percent of the adjusted federal alternative minimum taxable income of $5,416,230). By taking the lesser of these two figures, the defendant determined that the plaintiffs' 1998 Connecticut minimum tax was $270,812. Therefore, because the plaintiffs' Connecticut minimum tax ($270,812) exceeded the plaintiffs' regular Connecticut income tax liability ($243,579), the defendant determined that the plaintiffs were unable to apply any of the $25,471 credit earned in 1997. That credit, according to the defendant, would be carried forward for potential use in future years.

The crux of the defendant's claims on appeal relates to the court's calculations with respect to the plaintiffs' Connecticut minimum tax and more specifically, the plaintiffs' adjusted federal tentative minimum tax. In its March 10, 2005 memorandum of decision, the court determined that the defendant had erroneously calculated the plaintiffs' Connecticut minimum tax. The court noted the confusion created by the fact that because the plaintiffs had no federal alternative minimum tax liability for 1998, they automatically had no Connecticut

---

[16] The plaintiffs reported the amount $240,689 on their form CT-1040; however, the defendant made certain adjustments in its audit to calculate $243,579 as their regular Connecticut income tax liability. The plaintiffs did not challenge this adjustment.

[17] See General Statutes § 12-700.

minimum tax liability and, therefore, were not required to fill out the Connecticut minimum tax form CT-6251. Nevertheless, in order to calculate whether the plaintiffs were eligible to apply the previous year's credit, they were required, as a prerequisite to completing the credit form CT-8801, to complete form CT-6251, which essentially created a hypothetical Connecticut minimum tax liability. The court found that because the plaintiffs had no Connecticut alternative minimum tax liability for 1998, their Connecticut minimum tax would be zero. Specifically, the court found that "[i]f the [defendant] had chosen the '19 percent rate,' the Connecticut minimum tax would have been '0' since 19 percent of zero (there being no federal minimum tax) is zero."

We agree with the defendant that the court miscalculated the plaintiffs' Connecticut minimum tax for the purpose of determining their eligibility for the credit. As explained previously, the definition of "adjusted federal tentative minimum tax" in § 12-701 (24) is predicated on the definition of the federal "tentative minimum tax" in 26 U.S.C. § 55 (b). Although the plaintiffs' federal "alternative minimum tax," as reported on line twenty-eight of the plaintiffs' federal form 6251, was zero, their federal "tentative minimum tax" (which is the figure, after adjustments, to which the 19 percent rate is to be applied), as reported on line twenty-six of their 1998 federal form 6251, was $1,495,059. With adjustments,[18] the plaintiffs' adjusted federal tentative minimum tax for Connecticut purposes was $1,513,044, and 19 percent of that figure is $287,478. Thus, it appears that the

---

[18] The defendant, in the audit reconstruction, determined that the plaintiffs had additions to the federal alternative minimum taxable income totaling $64,233. Therefore, in accordance with line three of the 1998 form CT-6251, the defendant calculated the plaintiffs' adjusted federal alternative minimum taxable income as $5,416,230 ($5,351,997 + $64,233). Using this figure, the defendant calculated the adjusted federal tentative minimum tax as $1,513,044 ($5,416,230 x 28 percent [see 26 U.S.C. § 55 (b)] - $3500).

court confused the term "federal alternative minimum tax" with "adjusted federal tentative minimum tax" in calculating the plaintiffs' Connecticut minimum tax pursuant to § 12-701 (26) (A) and, therefore, incorrectly calculated the plaintiffs' eligibility to apply their previous year's credit pursuant to § 12-700a (d) (2).

Despite the court's miscalculation with respect to this figure, the court's decision should otherwise remain intact. As the court noted, it is undisputed that the plaintiffs paid a Connecticut alternative minimum tax of $25,471 for 1997. The defendant argues that although the plaintiffs are not entitled to apply the credit generated in 1997 against their 1998 taxes, it will continue to carry forward, indefinitely, until such time that the plaintiffs become eligible to apply the credit by virtue of their regular Connecticut income tax liability exceeding their Connecticut minimum tax. The court explained that the chance of this happening at any time in the future is nil. However, whether it would be usable at some time in the future is not dispositive, although it is relevant to whether we need to look to extratextual evidence to determine the meaning of § 12-700a (d) (2). The precise question instead is whether the plaintiffs are entitled to use the credit for 1998, the year involved in this case.

On appeal, the plaintiffs argue that § 12-700a (d) (2) is written such that it is impossible that their regular Connecticut income tax liability for a given year, which is roughly 4.5 percent of their federal adjusted gross income, will ever exceed their Connecticut minimum tax, which is based on roughly 5 percent of their federal adjusted alternative minimum taxable income,[19] and, therefore, they will never be able to recoup the credit.

[19] As previously stated, the alternative minimum taxable income is calculated in the same manner as regular taxable income with certain adjustments, which tend to increase taxable income. See *Moore* v. *Commissioner*, supra, TC Memo 2002-196.

In its brief, the defendant goes to great lengths to meticulously address, line by line, the calculations made by the trial court. Curiously, however, the defendant did not squarely counter the plaintiffs' assertion that the calculations required by § 12-700a (d) (2) create an impossibility. Moreover, at the hearing before the trial court, the defendant did not contest the court's assertion that the statute effectively resulted in double taxation and essentially conceded that it belied common sense and fundamental fairness.[20] Further, the defendant at oral argument before this court was unable to construct a hypothetical situation in which a taxpayer in a similar situation would ever be able to recoup the credit.

In determining the intent of § 12-700a (d) (2), we must consider, in addition to the text itself, that statute's relationship to other statutes. See General Statutes § 1-2z. General Statutes § 12-700a (d) (1) provides that a credit "shall be allowed" in an amount equal to the excess of the adjusted net Connecticut minimum tax

---

[20] For example, the following discourse occurred between the trial court and the defendant during the hearing on the defendant's motion for reargument and reconsideration:

"The Court: I understand [the plaintiffs'] theory in which they argued. If the court were to consider the merits of their argument, they would have to lose because their argument is that the statute is inappropriately worded. And it certainly is basic to this court that we cannot substitute our words for the legislators' legislative words, and that we—we are guided by what the statute says. So, if I were to acknowledge that position, I would have to come out differently.

"However, in looking . . . at the concept that the deferred income is taxed, and then there's a credit against the subsequent conversion of that deferred income into actual income, the taxpayer is entitled to a credit. If the taxpayer is not entitled to a credit, that taxpayer then has incurred double taxation.

"[The Defendant]: Again, from a logical, fundamental fairness standpoint, I don't think—you know, again, we're not in the business of saying whether it's fair or not. But that we don't see any—we see the court's logic in that. Again, it just comes down to, again, our job of applying the statute as written." (Emphasis added.)

imposed for prior years. Generally, one purpose of a tax credit is to eliminate the possibility of double taxation. See, e.g., *Sharper Image Corp.* v. *Miller*, 240 Conn. 531, 537, 692 A.2d 774 (1997) ("in order to eliminate the possibility of double taxation, a taxpayer may be entitled to a full or partial credit toward a use tax assessed in Connecticut for any sales tax paid in another state on any service or article of tangible personal property"). The mandatory credit language of § 12-700a (d) (1), therefore, is indicative of the fact that the purpose of the credit afforded to the taxpayer in the Connecticut alternative minimum tax scheme is to remunerate that taxpayer for taxes previously paid on deferred income.

Further, § 12-730 provides in relevant part that "any taxpayer aggrieved because of any determination or disallowance by the commissioner . . . may . . . take an appeal therefrom to the superior court. . . . *Said court may grant such relief as may be equitable . . . .*" (Emphasis added.) See *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 828, 776 A.2d 1068 (2001) (discussing, in context of eminent domain, that equitable question is different from strictly legal or technical question). "[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 278 Conn. 326, 335, 898 A.2d 170 (2006). Clearly, the plain language of § 12-730 indicates that the legislature intended to vest the court with the authority to grant a taxpayer relief in circumstances where equity demands such result.[21]

---

[21] We are aware that the mere fact of a perceived unfairness does not entitle a taxpayer to the benefit of the statute. See, e.g., *Yaeger* v. *Dubno*, 188 Conn. 206, 212–13, 449 A.2d 144 (1982); see *Skaarup Shipping Corp.* v. *Commissioner of Revenue Services*, 199 Conn. 346, 352, 507 A.2d 988 (1986) ("[W]e have frequently expressed our deference to legislative choices

Here, it is undisputed that for 1997, the plaintiffs were taxed on deferred income when they exercised stock options in that year and that pursuant to § 12-700a (d) (1), they are entitled to a credit for that amount. It is further undisputed that when the plaintiffs sold the stock in 1998, they were liable to pay tax on the gains realized from the sale, as ordinary income. Thus, unless the plaintiffs are able to recoup the credit for the tax they paid on the deferred income for 1997 at some time in the future, they will have been subjected to double taxation with respect to this income.

We note that the matter before us is distinguishable from *Bell Atlantic NYNEX Mobile, Inc.* v. *Commissioner of Revenue Services*, supra, 273 Conn. 265 (finding that legislature's decision to grant tax credit to certain business forms while denying it to others does not constitute absurd result and fairness of such decisions remains within prerogative of legislature), and *Yaeger* v. *Dubno*, supra, 188 Conn. 212–13 (finding that deductions from otherwise taxable income are matter of legislative grace and it is not province of court to make fairness determinations with respect to dividends tax). Here, unlike in those cases, it is undisputed that the plaintiffs are *entitled* to a credit. The pertinent question is whether the plaintiffs are entitled to use the credit for the 1998 taxable year.

After exhaustive review of the mechanics of the Connecticut alternative minimum tax credit scheme, we agree with the plaintiffs that § 12-700a (d) (2), on its face, appears to create a mathematical impossibility or, at best, a profound improbability that an individual

about the equities of classifications in tax statutes. As has the Supreme Court of the United States, we have acknowledged the large area of discretion which is needed by a legislature in formulating sound tax policies. . . . [I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification." [Internal quotation marks omitted.]).

taxpayer will ever be eligible to recoup a credit in subsequent years. In rudimentary terms, we cannot construct a reasonable situation in which an individual's regular Connecticut income tax liability (based on roughly 4.5 percent of Connecticut adjusted gross income) as set forth in General Statutes § 12-700 will ever exceed their "Connecticut minimum tax" (based on 5 percent of the adjusted federal alternative minimum taxable income or 19 percent of the adjusted federal tentative minimum tax) as defined by § 12-701 (26) (A). As such, we are left with what appears to be an absurd or unworkable result, and, therefore, we look to extratextual evidence to determine the meaning of the statute. See General Statutes § 1-2z.

In examining the legislative history, we find instructive the remarks of Gene Gavin, then commissioner of revenue services, before the joint standing committee on finance, revenue and bonding, regarding a proposed amendment to § 12-700a (d) (2), which was subsequently adopted in 1997. Gavin indicated two concerns with respect to the Connecticut alternative minimum tax credit. First, he emphasized bringing the Connecticut alternative minimum tax into conformity with the federal alternative minimum tax scheme. See Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, Pt. 2, 1997 Sess., p. 777, remarks of Gene Gavin, commissioner of revenue services ("we are proposing changes that will bring our state tax statutes into conformity with federal laws thus providing clarity and certainty to taxpayers"). Second, Gavin revealed the efforts of the department of revenue services to eliminate the potential for double taxation by correcting the formula for calculation. See id., p. 778 ("[o]ur proposal here will eliminate any question of a possible double tax on income from [the alternative minimum tax] and tax on the regular tax").

With respect to state conformity with the federal alternative minimum tax scheme, "[w]e have repeatedly recognized that our tax laws incorporate federal tax principles . . . ." (Citations omitted.) *Skaarup Shipping Corp.* v. *Commissioner of Revenue Services,* supra, 199 Conn. 351. Here, unlike the defendant's disallowance of the plaintiffs' prior year credit for 1998 that was established when the defendant calculated the plaintiffs' form CT-8801, the plaintiffs, pursuant to 26 U.S.C. § 53, were entitled to a federal credit for the entire amount due from the prior year as set forth in their federal form 8801. It is highly significant that the federal tax code permitted the plaintiffs to claim a credit for the *entire* amount, while the state credit scheme, which seeks to mirror the federal credit scheme, disallowed the application of *any* credit. See *Skaarup Shipping Corp.* v. *Commissioner of Revenue Services,* supra, 351 (finding federal tax credit restriction "highly significant" in interpreting state law credit consequences).

With respect to double taxation, the defendant argues that Gavin's statements were made in the context of a proposed amendment to § 12-700a (d) (2) to address the very specific issue of permitting taxpayers to use either 19 percent of the adjusted federal tentative minimum tax or 5 percent of the adjusted federal alternative minimum taxable income and that the statements were not intended to be a panacea for all credit issues. Although we agree that the statements were made within this context, it is axiomatic that the avoidance of double taxation by the same taxing authority is an overarching concern for the defendant. Moreover, Gavin's remarks imply that the question of double taxation had arisen within the alternative minimum tax credit calculation and that this was a particular concern that needed to be addressed by a legislative amendment. As such, we find Gavin's remarks supportive of the proposition that an intended purpose of § 12-700a (d)

(2), as amended, is to avoid such double taxation by providing a credit.

Thus, we are left with the peculiar situation in which a statute, which the legislature clearly enacted to provide a mandatory credit to taxpayers, creates a profound probability that no taxpayer will ever be entitled to recoup such a credit, as a result of its flawed mechanics. We conclude that this flaw purely was a manifestation of legislative inadvertence and runs counter to the legislature's clear attempts to avoid such a situation. Therefore, to follow blindly the wording of the statute without regard to the obvious intention of the legislature would create an absurd result in accord with neither established principles of statutory construction nor common sense. See, e.g., *In re Adamo*, 619 F.2d 216, 222 (2d Cir.) (finding that premature repeal of statute prior to effective date of successor provision was result of congressional inadvertence), cert. denied sub nom. *Williams* v. *New York State Higher Education Services Corp.*, 449 U.S. 843, 101 S. Ct. 125, 66 L. Ed. 2d 52 (1980). Fortunately, the legislature has provided an appropriate equitable statutory vehicle for courts to deal with situations such as this, which arise from time to time. See General Statutes § 12-730.

Accordingly, we agree with the trial court that because the plaintiffs will not, in all likelihood, recoup the credit earned in 1997, the plaintiffs effectively were taxed twice on the same income by the same taxing authority and that this created a result that is neither fair nor equitable. We conclude that the calculations required by § 12-700a (d) (2) create a profound mathematical improbability that the plaintiffs will ever recoup their credit. Accordingly, we hold that the trial court properly applied § 12-730 in making an equitable determination to grant the credit on the basis of the factual record before the court.

The judgment is affirmed.

In this opinion the other judges concurred.