JEANNE RIVERS *v.* CITY OF NEW BRITAIN ET AL.
(AC 27560)

Bishop, McLachlan and Rogers, Js.

Argued November 17, 2006—officially released February 6, 2007

*Linda Clough*, with whom, on the brief, was *Robert F. Weber, Jr.*, for the appellant (plaintiff).

*Irena J. Urbaniak*, city attorney, for the appellee (named defendant).

*Opinion*

McLACHLAN, J., The plaintiff, Jeanne Rivers, appeals from the trial court's rendering of summary judgment in favor of the defendant city of New Britain.[1] The determinative issue on appeal is whether the court improperly granted the defendant's motion for summary judgment by concluding that it had no duty to keep a sidewalk abutting state property reasonably safe for public travel because it had adopted, by ordinance, the provisions of General Statutes § 7-163a.[2] We conclude

---

[1] This action initially was brought in two counts against the city of New Britain and Stephen E. Korta, commissioner of transportation. The trial court granted Korta's motion to dismiss, a decision the plaintiff does not challenge on appeal. We therefore refer in this opinion to the city of New Britain as the defendant.

[2] General Statutes § 7-163a provides: "(a) Any town, city, borough, consolidated town and city or consolidated town and borough may, by ordinance, adopt the provisions of this section.

"(b) Notwithstanding the provisions of section 13a-149 or any other general statute or special act, such town, city, borough, consolidated town and city or consolidated town and borough shall not be liable to any person injured in person or property caused by the presence of ice or snow on a public sidewalk unless such municipality is the owner or person in possession and control of land abutting such sidewalk, other than land used as a

that the court was correct in its determination and properly granted the motion. Accordingly, we affirm the judgment of the trial court.

The following undisputed facts, as provided in the pleadings and the evidence submitted by the parties in conjunction with the defendant's motion for summary judgment and the plaintiff's opposition thereto, are relevant to the disposition of the plaintiff's appeal. The plaintiff claimed that she suffered serious injuries on January 7, 2003, when she slipped and fell on ice and snow that had accumulated on a public sidewalk in front of 185 Main Street in New Britain. The property abutting the sidewalk is state owned property, which is used as part of Central Connecticut State University (university). Portions of that state owned property are leased to private businesses. The university had a contract with Lawn Ranger, LLC, to provide snow removal, sanding and application of ice melting services at the subject property. The company provided services pursuant to that contract the day before the plaintiff fell.

The plaintiff commenced this action against the defendant, pursuant to General Statutes § 13a-149,[3] and

highway or street, provided such municipality shall be liable for its affirmative acts with respect to such sidewalk.

"(c) (1) The owner or person in possession and control of land abutting a public sidewalk shall have the same duty of care with respect to the presence of ice or snow on such sidewalk toward the portion of the sidewalk abutting his property as the municipality had prior to the effective date of any ordinance adopted pursuant to the provisions of this section and shall be liable to persons injured in person or property where a breach of said duty is the proximate cause of said injury. (2) No action to recover damages for injury to the person or to property caused by the presence of ice or snow on a public sidewalk against a person who owns or is in possession and control of land abutting a public sidewalk shall be brought but within two years from the date when the injury is first sustained."

[3] General Statutes § 13a-149 provides in relevant part: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . ."

Stephen E. Korta, the commissioner of transportation, pursuant to General Statutes § 13a-144.[4] Korta filed a motion to dismiss, claiming that the plaintiff's action against him was barred by sovereign immunity because the sidewalk where the plaintiff fell was not part of the state highway system. The plaintiff did not file an objection, and the court granted the motion.

The defendant filed an answer and a special defense. The special defense alleged that the defendant was not liable for the plaintiff's fall because it had adopted ordinance § 21-8.1c in January, 1996, in accordance with the provisions of § 7-163a. The language of the ordinance essentially mirrors the language of the statute. On January 30, 2006, the defendant filed a motion for summary judgment on the basis of the facts alleged in its special defense. The plaintiff filed an objection, claiming that the statute did not apply under the circumstances of this case. The court heard argument and issued its memorandum of decision on March 30, 2006, granting the defendant's motion. This appeal followed.

The plaintiff claims on appeal that the court improperly rendered summary judgment in favor of the defendant. She argues that the provisions of § 7-163a do not permit the shifting of the duty of care with respect to the presence of ice or snow on a public sidewalk if the abutting landowner is the state of Connecticut. She argues that the state did not waive its sovereign immunity by enacting § 7-163a and that the city cannot shift liability to the state by adopting its provisions by ordinance. The plaintiff claims that, under those circumstances, the liability to persons injured by the failure

---

[1] General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ."

to remove an unreasonable accumulation of ice or snow remains with the city.

"Summary judgment is appropriate when the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Thus, because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary . . . ." (Citation omitted; internal quotation marks omitted.) *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 4860, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). Furthermore, because our resolution of the plaintiff's claim requires us to construe § 7-163a as it applies to a particular factual scenario, our review of that issue of law is plenary. See, e.g., *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 570, 887 A.2d 848 (2006) (statutory interpretation gives rise to issue of law over which appeals court's review is plenary).

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002). In the present case, the court concluded that the plain language of § 7-163a, as adopted by the defendant's ordinance, relieved the defendant from liability for the plaintiff's injuries. In reaching this conclusion, the court noted that it was undisputed that the defendant did not own the land abutting the sidewalk, that no evidence had been presented that the defendant was in possession and control of the abutting land or that it had performed any affirmative acts with respect to the sidewalk. Accordingly, it rendered summary judgment in favor of the defendant because the statute clearly provided that the defendant was not liable for the plaintiff's injuries.

As we previously noted, the plaintiff's action was brought against the defendant pursuant to § 13a-149. The state owns the land abutting the sidewalk where the plaintiff fell, and the defendant was not in possession or control of that abutting property. The defendant did not perform any affirmative acts with respect to the sidewalk. General Statutes § 7-163a (b) provides: "Notwithstanding the provisions of section 13a-149 or any other general statute or special act, such . . . city . . . *shall not be liable* to any person injured in person or property caused by the presence of ice or snow on a public sidewalk *unless such municipality is the owner or person in possession and control of land abutting such sidewalk*, other than land used as a highway or street, *provided such municipality shall be liable for its affirmative acts with respect to such sidewalk.*" (Emphasis added.) The circumstances of the present case fall squarely within the provisions of § 7-163a.

The plaintiff claims that an exception must be made when the owner of the land abutting the public sidewalk is the state of Connecticut. She claims that because the state did not waive sovereign immunity when it enacted § 7-163a, liability did not shift, but rather remained with the city. She further argues that the defendant cannot by ordinance impose liability on the state, i.e., the defendant cannot waive the state's sovereign immunity.

We agree that the provisions of § 7-163a do not contain language waiving the state's sovereign immunity. "[T]he state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) *Lacasse* v. *Burns*, 214 Conn. 464, 468, 572 A.2d 357 (1990). We also agree that a municipality cannot waive the sovereign immunity of the state by way of a local ordinance. Nevertheless, those conclusions

do not warrant the ultimate conclusion that the provisions of § 7-163a do not apply in this case.

In order to conclude that the provisions of § 7-163a do not apply, this court would have to read into those provisions an exception. We would have to determine that the shifting of liability does not occur if the owner of the land abutting the public sidewalk is the state of Connecticut. It is undisputed that no such language is found in § 7-163a, and, therefore, we would have to add it by implication. The plaintiff urges this court to do so, claiming that the legislative history for the statute supports such a result.

The fact remains that the statutory language of § 7-163a is clear and unambiguous and does not contain any such exception. "As our Supreme Court has often stated, [w]e are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . . [T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Vargas* v. *Doe*, 96 Conn. App. 399, 407–408, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006). "[W]e interpret legislative intent by reference to what the legislative text contains, not by what [that text] might have contained." (Internal quotation marks omitted.) *Colangelo* v. *Heckelman*, 279 Conn. 177, 190, 900 A.2d 1266 (2006) (refusing to read "special hazards" test into statutory exception found at General Statutes § 31-293a).

Furthermore, General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or

unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Accordingly, we may not consider the legislative history of § 7-163a or any other extratextual sources.

The plaintiff argues that a literal construction of the statute will create confusion and inconsistencies not intended by the legislature.[5] She also argues that if her only recourse is to file a claim with the claims commissioner pursuant to General Statutes § 4-141 et seq., her claim could be denied, and she might never have a hearing on the merits. She would then be treated differently from an individual who fell on a public sidewalk that did not abut property owned by the state.

The plaintiff is requesting that we change the language of the statute by judicial interpretation to avoid such a result. To revise the statute in the way advocated by the plaintiff represents a policy decision more properly left to the legislature, not this court. "It is . . . up to the legislature, and not to the courts, to correct claimed injustices resulting from clear and unambiguously worded statutes, at least unless constitutional questions are raised, and since no constitutional question was raised in the trial court, it will not now be considered by us." *Edmundson* v. *Rivera*, 169 Conn. 630, 635–36, 363 A.2d 1031 (1975).

The judgment is affirmed.

In this opinion ROGERS, J., concurred.

---

[5] At oral argument before this court, the plaintiff argued that three judicial decisions support her interpretation of the statute. Because the legislature has not amended the statute subsequent to those decisions, the plaintiff claims that it has acquiesced in those judicial interpretations. That argument is weakened by the fact that all three cases are Superior Court decisions. We can presume that the legislature is aware of our decisions and decisions of our Supreme Court. "Although legislative inaction is not necessarily legislative affirmation . . . we . . . presume that the legislature is aware of [the Supreme Court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *Kondrat* v. *Brookfield*, 97 Conn. App. 31, 42, 902 A.2d 718, cert. denied, 280 Conn. 926, 908 A.2d 1087 (2006).

BISHOP, J., dissenting. At the outset, I agree with my colleagues in the majority that the language of General Statutes § 7-163a is facially clear and unambiguous. I also agree that the statute does not contain an implicit waiver of sovereign immunity. I part company with the majority on the question of whether the statute is unworkable and, therefore, whether we may resort to the legislative history of the statute to more fully understand its intent. Therefore, I respectfully dissent.

General Statutes § 1-2z provides in relevant part that if the meaning of a statute can be gleaned from its plain and unambiguous text, extratextual evidence of the meaning of the statute shall not be considered unless the application of the plain meaning would yield "absurd or unworkable results . . . ." Although § 1-2z does not define the term "unworkable," a review of decisional law on this point suggests that the term connotes the notion of practicality. For example, in *State* v. *Cain*, 223 Conn. 731, 613 A.2d 804 (1992), our Supreme Court found unworkable the application of the language of a statute and rule of practice to 911 calls. There, the statute and rule in question plainly and unambiguously required the state to produce witness statements to a defendant for cross-examination purposes. Concluding that it would be impracticable to expect police departments to retain tapes of 911 calls indefinitely, the court found that application of the statute by its terms would be unworkable and, thus, excepted tapes from 911 calls from the statute's requirements. Id., 746–47. Similarly, in *State* v. *Brown*, 242 Conn. 389, 699 A.2d 943 (1997), the court found that a literal interpretation of the plain language of a statute and rule of practice would lead to an unworkable result. There, the court was confronted with a defendant's claim that the information against him should have been dismissed because he had been denied the right to a speedy trial in accordance with

the provisions of General Statutes § 54-82m and Practice Book §§ 956B, 956C and 956D (now §§ 43-39, 43-40 and 43-41) even though his counsel was trying a case elsewhere when he made his claim for a speedy trial. Affirming the trial court's denial of the defendant's motion, the Supreme Court concluded that strict adherence to the plain text of the statute and the rules would be unworkable because such an application would deny to the court its inherent power to make an accommodation between one's right to a speedy trial and the unavailability of counsel. *State* v. *Brown,* supra, 406. Finally, in the same vein, this court concluded in *Blasko* v. *Commissioner of Revenue Services,* 98 Conn. App. 439, 910 A.2d 219 (2006), that the application of the plain text of General Statutes § 12-700a (d) (2) would be unworkable because to do so would likely create a mathematical impossibility. As a consequence, the court concluded: "As such, we are left with what appears to be an absurd or unworkable result, and, therefore, we look to extratextual evidence to determine the meaning of the statute." *Blasko* v. *Commissioner of Revenue Services,* supra, 455.

General Statutes § 7-163a has two principal facets: the shifting of liability and the responsibility for public safety. As noted by the majority, § 7-163 permits a municipality that owns a sidewalk to enact an ordinance to shift the responsibility for clearing ice and snow from the sidewalk to an abutting landowner and to make the abutting owner liable for not meeting its statutory responsibility. However, because the abutting landowner in this instance is the state, the burden and responsibility shifting features of the statute cannot be accomplished. Therefore, I believe that literal adherence to the statute's text is unworkable in the instance at hand.

In its brief, the defendant city of New Britain argues that if the legislature had wanted to exempt the state

from liability under § 7-163a, it could easily have done so and that the only logical interpretation of § 7-163 is that by "necessary implication," the legislature intended all property owners, including the state, to be accountable for sidewalk snow and ice claims. This position contravenes established sovereign immunity jurisprudence.

Pursuant to general tenets of sovereign immunity, the state is immune from suit and from liability unless its immunity has been expressly waived. See generally *McIntosh* v. *Sullivan*, 274 Conn. 262, 268, 875 A.2d 459 (2005). Sovereign immunity is comprised of two concepts, immunity from liability and immunity from suit. "There is . . . a distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant." *St. George* v. *Gordon*, 264 Conn. 538, 550, 825 A.2d 90 (2003). Our Supreme Court has stated that "[w]here there is any doubt about [the] meaning or intent [of the statute, it is] given the effect which makes the least rather than the most change in sovereign immunity. . . . [T]he state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by the use of express terms . . . ." (Citation omitted; internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 312–13, 567 A.2d 1195 (1990). In this case, because § 7-163a contains neither a waiver of immunity from suit nor from liability, neither can be inferred.

Furthermore, § 7-163a is not made workable simply because the plaintiff, Jeanne Rivers, may file a claim

with the claims commissioner. Indeed, the plaintiff acknowledges that she may seek permission from the claims commissioner, pursuant to General Statutes § 4-160, to bring suit against the state. This, too, however, is problematic. General Statutes § 4-160 (a) authorizes actions against the state "on any claim which, [in the opinion of the claims commissioner], presents an issue of law or fact under which the state, were it a private person, could be liable." In this instance, the state, were it a private citizen, would have no common-law duty to keep the sidewalk in question reasonably clear of ice and snow because the sidewalk is not within its possession. Thus, the only basis on which the claims commissioner could find the state liable, if it were a private party, would be by the application of § 7-163a, the statute in question. It is uncertain to me whether the commissioner would or could apply the statute's requirements to the state, even as a private party, because the legislature could readily have imposed a duty of reasonable care on the state in this statute even absent a waiver of immunity from suit. See *Flanagan* v. *Blumenthal*, 265 Conn. 350, 357, 828 A.2d 572 (2003) (legislature may waive state's immunity from liability without also waiving state's immunity from suit). It is clear that § 4-160 merely gives a claimant the right to make a claim. That is, the claims statute creates no substantive rights against the state for which a claimant is entitled to redress. See *Chotkowski* v. *State*, 240 Conn. 246, 270, 690 A.2d 368 (1997). Therefore, although a claimant may arguably present a claim to the claims commissioner, it is not apparent to me that the commissioner would or could honor such a claim in this instance.[1]

---

[1] Although the record reflects that the state has employed an independent contractor for snow and ice removal from the sidewalk in question, I do not believe that this act is legally significant.

Aside from the difficulties regarding the imposition of liability on the state for damages, I believe that § 7-163a is unworkable as a mechanism to provide for public safety on municipal sidewalks.

That § 7-163a has a public safety purpose cannot reasonably be debated. In discussing General Statutes § 13a-144, the state highway statute analogous to General Statutes § 13a-149 regarding municipal roads and sidewalks, our Supreme Court noted that although the statute does not make the state an insurer of the safety of travelers, it does impose on the state the duty of reasonable care to keep roads in a reasonably safe condition for a reasonably prudent traveler. *Serrano* v. *Burns*, 248 Conn. 419, 426, 727 A.2d 1276 (1999). In this case, however, because § 7-163a does not constitute a waiver of the state's immunity from liability, it is difficult to conceive how it can be implied from the statute that it imposes any duty on the state for public safety regarding a sidewalk not located on state property. Thus, it is the inevitable consequence of the majority's holding that § 7-163a relieves the municipality of its public safety responsibility without shifting it to the abutting landowner because the abutter happens to be the state. I believe this circumstance alone makes the statute unworkable and permits the court, on review, to examine the purpose of the statute beyond its text.

A review of the legislative history makes it plain that the intent of the General Assembly in enacting § 7-163a was to permit a municipality to pass an ordinance to shift the burden of liability regarding snow and ice on municipal sidewalks from the municipalities' taxpayers to abutting private property owners. On April 31, 1981, when introducing the bill to the House of Representatives, Representative Alfred J. Onorato commented: "Mr. Speaker, basically this bill would permit the municipality the option of providing an [action to] recover

[for] injuries from snow and ice cases, provided by ordinance, shifting the burden onto private property [that] does not come under the direct control of the city or the municipality." 24 H.R. Proc., Pt. 12, 1981 Sess., p. 3773. Representative Onorato also commented: "The homeowner would be liable except for affirmative acts by the municipality, or any of its subdivisions." Id., p. 3777. Later, on May 26, 1981, Representative Onorato, in responding to a concern that the bill would impose a greater duty on an abutting landowner than existent law then imposed on the municipality, commented: "[I]t imposes no burden on them that they're not now already paying. They're already paying for their homeowners insurance which is an extension of their yard at this point . . . ." 24 H.R. Proc., Pt. 21, 1981 Sess., p. 7058.

Although the legislative history regarding § 7-163a is scant, it is plain that in enacting this legislation, the bill's principal proponent urged it on his colleagues as a burden shifting vehicle from the taxpayers to abutting private landowners. Today's holding is not consonant with that purpose. Indeed, the effect of the majority opinion is not to shift the burden of liability and corresponding responsibility from the municipality to another party, but merely to relieve the municipality of any duty regarding snow and ice on its sidewalks to the detriment of public safety and to the unreasonable disadvantage of claimants who happen to fall on a municipal sidewalk abutted by state property.

For the reasons stated, I would conclude that § 7-163a is inapplicable to the circumstances at hand in which the state is the abutting landowner. As a consequence, I would reverse the judgment and remand the matter for further proceedings. Accordingly, I respectfully dissent.